IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TRACY ARNOLD,** as the Personal Representative of the Estate of DARIN W. ARNOLD, deceased, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:18-CV-1931-L** |
| **BNSF RAILWAY COMPANY** f/k/a Burlington Northern and Santa Fe Railway Company, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for More Definite Statement and Motion for *Lone Pine* Order (Doc. 17), filed December 6, 2018. After considering the motions, response, reply, pleadings, and applicable law, the court **denies** Defendant's Motion for More Definite Statement, **denies** the Motion for *Lone Pine* Order, and **denies** Defendant's alternative request to file a "no-evidence" summary judgment motion at this early stage of the case (Doc. 17).

### I.    Factual and Procedural Background

Darin W. Arnold (the "Decedent") died on July 30, 2018, after working for Burlington Northern and Santa Fe Railway Company ("Defendant") for 22 years. On behalf of the Decedent's estate, Tracy Arnold ("Plaintiff"), the Decedent's wife, sued Defendant for negligence under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and violations of the Federal Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701, alleging that the Decedent's death was caused by his exposure to toxic substances and known carcinogens while working on the

**Memorandum Opinion and Order – Page 1**

Defendant's railroad during his employment. Plaintiff alleges that the Decedent "worked out of [Defendant's] Cherokee Yard in Tulsa, OK[,] from which he made runs to Ardmore, OK; Springfield, MO; Madill, OK[;] and [] Dallas, TX" and was also "temporarily based in the Dallas Yard." Plaintiff seeks damages in the amount of $400,000. Pl.'s Compl. ¶ 5.

On December 6, 2018, Defendant moved for a more definite statement under Federal Rule of Civil Procedure 12(e). Defendant also moved for entry of a *Lone Pine* order. Among other things, Defendant contends that Plaintiff has failed to identify the chemicals to which the Decedent was exposed, the location of his exposure, and the date of his initial exposure.[1] On December 26th, 2018, Plaintiff filed a response to both the motion for more definite statement and the motion for a *Lone Pine* order, to which Defendant replied on January 8, 2019, making the motions ripe for resolution.

## II.     Motion for More Definite Statement

### A.     Rule 8(a) and Rule 12(e) Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 only requires "notice" pleading. Accordingly, it is not necessary that the pleader set forth each and every factual allegation supporting a claim. The "short and plain statement," however, must contain sufficient

---

[1] Defendant also argues, in passing, that a more definite statement is needed to determine why venue is proper in the Dallas Division of the Northern District of Texas, as opposed to the Fort Worth Division of the Northern District of Texas, where Defendant is headquartered. Defendant acknowledges that venue in the Northern District of Texas is proper but appears to contend that the Fort Worth Division would be a more convenient. Plaintiff alleges that the Decedent was exposed to toxic chemicals while working for Defendant in Dallas, Texas, as well as other areas of Defendant's railroad. As Dallas, Texas, is located in Dallas County, which in turn is located in the Northern District of Texas, 28 U.S.C. § 124(a)(1), Plaintiff's venue allegations are sufficient to establish that venue in the Northern District of Texas is proper under 28 U.S.C. § 1391(b)(2). While Defendant contends that it requires more information to support a defense of improper venue under Rule 12(b)(3), it is not incumbent on Plaintiff to allege facts to support this or any other defense that Defendant may wish to assert. Further, as Defendant has not moved to transfer venue to the Fort Worth Division for the convenience of the parties and witnesses, or to dismiss this action based on improper venue, the court does not consider this issue in ruling on its current motions, except to the extent noted here, as it determines that this is not a proper basis for seeking a more definite statement under Rule 12(e).

allegations of fact "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cty. Narcotics Intell. & Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotation marks and citation omitted). A motion for a more definite statement under Rule 12(e) should be granted to clarify the complaint only when the complaint is so unintelligible that the court cannot "make out one or more potentially viable legal theories," and is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to itself." *Sefton v. Jew*, 204 F.R.D. 104, 106 (W.D. Tex. 2000). When a respondent complains of matters that could be answered via discovery, a motion for more definite statement is not warranted. *Arista Records, LLC v. Greubel,* 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006).

  **B.  Law Applicable to Claims Brought Under FELA and for LIA Violations**

  As noted, Plaintiff asserts a claim under FELA for negligence and alleges that Defendant violated the LIA. "Under [the] FELA, an injured railroad employee may recover damages for 'injury or death resulting in whole or in part from the negligence' of the railroad." *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 416 (5th Cir. 2012) (quoting 45 U.S.C. § 51). The FELA provides the exclusive remedy for a railroad employee engaged in interstate commerce who suffers an injury that is caused by a railroad employer's negligence. *Id.* (citation omitted). It requires a railroad to provide "a reasonably safe work environment for its employees." *Huffman*, 675 F.3d at 417 (citing *Urie v. Thompson*, 337 U.S. 163, 179 n.16 (1949)). Thus, the question that arises in most FELA cases is "whether the railroad exercised reasonable care in creating a reasonably safe working environment." *Rivera v. Union Pac. R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004). Negligence under the FELA "exists if the defendant railroad 'knew, or by the exercise of due care should have known' that its conduct

**Memorandum Opinion and Order – Page 3**

was 'inadequate to protect [the plaintiff] and similarly situated employees.'" *Huffman* , 675 F.3d at 417 (quoting *Urie*, 337 U.S. at 178). A claim for negligence under the FELA requires factual allegations that support a "breach of [the] standard of care, causation, and damages." *Huffman*, 675 F.3d at 419 (citing *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 540 (1994)). When "an injury has multiple causes, it is sufficient if the railroad's 'negligence played a part—no matter how small—in bringing about the injury.'" *Huffman*, 675 F.3d at 419 (quoting *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 698 (2011)).

The LIA, formerly known as the Boiler Inspection Act, amended the FELA "substantively if not in form." *Urie*, 337 U.S. at 189. The LIA is not a basis for liability; rather, it imposes an absolute and continuing duty on a railroad carrier to provide safe equipment. *Danko v. Union Pac. R. Co.*, No. 405-CV-153-BE, 2007 WL 1854059, at *5 (N.D. Tex. June 28, 2007) (citing *Urie*, 337 U.S. at 188-89, which explained that a cause of action under the LIA is brought as an FELA action). The LIA provides:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts or appurtenances—
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. The LIA "is a safety statute which is to be liberally construed to afford protection to railroad employees." *Weaver v. Missouri Pac. R. Co.*, 152 F.3d 427, 430 (5th Cir. 1998) (citation

omitted). Proof of a violation of the LIA "is effective to show negligence [under the FELA] as a matter of law." *Id.*

C. **Analysis**

The allegations in the Amended Complaint ("Complaint") (Doc. 3) regarding Plaintiff's claim under the FELA for negligence and violations of the LIA are sufficient for purposes of Rule 8. Plaintiff alleges that the Decedent was "exposed to various toxic substances and carcinogens such as diesel fuel/fumes/exhaust, petroleum distillates vapors, herbicides, creosote and rock/mineral/asbestos dust and fibers" while working in Defendant's railroad "yards, buildings, locomotives and along right of ways" in Oklahoma, Missouris, and Texas. Pl.'s Compl. ¶ 5. The Complaint lists six different toxic chemicals to which the Decedent was exposed and alleges that they are known carcinogens, "which Defendant knew, or in the ordinary exercise of ordinary care should have known, were deleterious, poisonous, toxic and highly harmful to its employees' health." *Id*. ¶¶ 6-10. The Complaint also lists the several ways in which Defendant acted negligently. *Id.* ¶ 11. With respect to the LIA, Plaintiff alleges that Defendant failed to use "low emissions fuel such as bio diesel" and "failed to provide the [Decedent] with locomotives that had proper and adequate ventilation and/or air filtration systems, the failure of which allowed diesel fumes, dust, fibers and toxins to accumulate and, subsequently, be inhaled by the [Decedent]," and that this conduct violated 49 C.F.R. §§ 229.7, 229.45, and 229.43(a)'s requirements and prohibitions. Pl.'s Compl. 12-15. In addition, Plaintiff alleges that the Decedent's exposure to the cancer-causing materials caused or contributed to his developing leukemia, which ultimately led to his death in July 2018.

While Defendant contends that Plaintiff has failed to identify the chemicals to which the Decedent was exposed, the location of his exposure, and the date of his initial exposure, the court

determines that these concerns can be addressed through the discovery process. The court also disagrees that Plaintiff has not identified with sufficient specificity, for purposes of Rule 8, the chemicals or carcinogens to which he was exposed or the locations of his exposure. Likewise, specific or detailed questions regarding the number of railroad stations or areas that Defendant worked, when the chemical exposure began, and levels of chemicals to which the Decedent was exposed can be addressed and answered through the normal discovery process. Moreover, Defendant cites no authority to show that such information must be pleaded by a party seeking to recover under the FELA for negligence or violations of the LIA. As the court is able to deduce the legal theories surrounding the claim(s) asserted by Plaintiff based on the facts alleged, it determines that Defendant will not be legally prejudiced if it is required to file an answer or otherwise respond to the Complaint. The court will, therefore, deny Defendant's request under Rule 12(e) for a more definite statement.

### III.     Motion for *Lone Pine* Order

####      A.     The Parties' Contentions

In support of its request for a *Lone Pine* order,[3] Defendant similarly argues that entry of a *Lone Pine* order is warranted in this case because it is faced with the burdensome task of identifying "every yard, building, [and] locomotive where Plaintiff has worked; establishing the time frames of those assignments; and determining what, if any, . . . alleged toxic substances" the Decedent

---

[3] *Lone Pine* orders derive from the 1986 decision in *Lore v. Lone Pine Corporation*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. 1986), in which the court entered a pretrial order requiring the plaintiffs to provide facts in support of their claims through expert reports. *See id*; *see also Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

encountered. Defendant also notes other financially, burdensome factors that it contends will affect its ability to defend against Plaintiff's claims. Def.'s Mot. 8.

Plaintiff disagrees and contends, based on a five-factor test in *In re Digitek Products Liability Litigation*, 264 F.R.D. 249, 255 (S.D. W.Va. 2010), that entry of a *Lone Pine* order in this case is not appropriate. Plaintiff contends that, based on application of the five-factor test in *In re Digitek*, the court in *Marquez v. BNSF Railway*, No. 17-CV-01153-CMA-MEH, 2017 U.S. Dist. LEXIS 124662 (D. Colo. Aug. 8, 2017), a case that is factually similar to this case, the court found no extraordinary circumstances that required entry of a *Lone Pine* order. Plaintiff acknowledges that the reasoning in *Marquez* is not controlling, but she maintains that it should be considered persuasive because of the similarities between this and that case. Based on the reasoning in these and other cases, Plaintiff contends that entry of a *Lone Pine* order, which is considered an extreme remedy, would not be appropriate in this case, as it would give the defense an unfair advantage; shift the burden to her to come forward with evidence to support her claims before conducting discovery; and unnecessarily increase the cost of litigation. Pl.'s Resp. 9, 12.

Defendant replies that the Fifth Circuit has never required or prohibited application of the test relied on by Plaintiff or ever endorsed an analytical framework for determining whether entry of a *Lone Pine* order is appropriate. Def.'s Reply 3 (citing *Abner v. Hercules, Inc.*, 2:14CV63-KS-MTP, 2017 WL 2273182, at *2 (S.D. Miss. Jan. 3, 2017), *report and recommendation adopted in part*, 2:14-CV-63-KS-MTP, 2017 WL 4236584 (S.D. Miss. Sept. 25, 2017), and *Abner v. Hercules, Inc.*, 2:14-CV-63-KS-MTP, 2014 WL 5817542, at *2 (S.D. Miss.

Nov. 10, 2014)).⁴ While no discovery has taken place in this case, Defendant contends that *Lone Pine* Orders are considered "pre-discovery orders" that are "designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation." Def.'s Reply 3-4 (quoting *Acuna,* 200 F.3d at 340). For this reason, Defendant contends that "[t]his case is ideal for the entry of a *Lone Pine* [o]rder" and will help streamline discovery and minimize expense. Def.'s Reply 4-5.

Defendant also asserts that *Lone Pine* orders are not limited to mass tort litigation and have been entered in cases involving "fewer parties," for example, in cases involving between twenty-eight and seventy-one plaintiffs. In this regard, Defendant notes that, in *Jenkins v. BNSF Railway Company*, United States District Judge John McBryde ("Judge McBryde") acknowledged that *Jenkins* only involved one plaintiff and one defendant but, nevertheless, indicated that entry of a *Lone Pine* order was appropriate because *Jenkins* was one of approximately thirty cases filed by the same attorney against Defendant that included the same broad allegations of exposure.⁵ In a footnote, Defendant notes that Judge McBryde, in lieu of entering a *Lone Pine* order, ultimately issued an order authorizing it to file:

> a "no evidence" motion for summary judgment, without prejudicing [its] right to file another motion for summary judgment if appropriate later in the litigation if necessary, in order to "fl[e]sh out whatever information defendant might need to proceed with discovery if the motion is denied or bring this case to an end if plaintiff lacks evidence to raise issue of fact as to the essential elements of her claim."

---

⁴ Defendant actually cites *Abner v. Hercules, Inc*., No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956, at *230 (S.D. Miss. Jan. 13, 2016), but this appears to be an incorrect citation, as the court was unable to find any opinion that was entered in *Abner* on January 13, 2016, or any opinion containing 230 pages.

⁵ For support, Defendant submitted two orders that were entered by Judge McBryde in *Jenkins* on July 16, 2018, and September 25, 2018, which are not in Westlaw's or Lexis's databases. Defendant also attached a Memorandum Opinion and Order by Judge McBryde, granting Defendant's motion for summary judgment in *Jenkins v. BNSF Railway Company* 4:18-CV-178-A, 2018 WL 6181650, at *3 (N.D. Tex. Nov. 27, 2018).

> [Defendant] would take no exception to this Court's issuing a similar order in this case instead of a *Lone Pine* [o]rder.

Def.'s Reply 6 n.3. Defendant acknowledges that Plaintiff has "criticize[d] [its] Motion as a vehicle to move for summary judgment prior to the completion of discovery," but it contends that "Federal Rule of Civil Procedure 56(b) expressly allows for a party to move for summary judgment at any time until thirty days after the close of all discovery." *Id.*

Defendant further asserts that, "[i]n truth, a *Lone Pine* Order will only result in early summary judgment if Plaintiff has no basis for the suit she has filed. If that is the situation, then equating this motion with an early summary judgment motion – as Judge McBryde did in *Jenkins* – is entirely appropriate" because a plaintiff's "failure to comply with a *Lone Pine* order may result in dismissal for non-compliance or other sanctions." *Id.* at 7 (citing *Acuna*, 200 F.3d at 341). Defendant agrees with Plaintiff that causation issues can be highly contentious and involve expert testimony but argues that "[t]hese complexities are the precise reasons the court should order a *Lone Pine* order" because "Plaintiff has alleged that the [D]ecedent developed (some kind of) leukemia from his exposure to toxic substances and carcinogens over the course of twenty-two years." Def.'s Reply 7 (citation omitted). Defendant, therefore, argues that,

> [b]efore burdening [Defendant] and this court with excessive time, high costs, voluminous discovery, and essentially a broad fishing expedition to determine the cause of the decedent's cancer, Plaintiff should be required to lay forth some basis for her claims. Plaintiff's pleadings of "what she believes" to have "caused the decedent his injuries" is insufficient and meritless.

*Id.* at 7-8.

### B. Analysis of Whether a *Lone Pine* Order is Warranted in this Case

No federal rule expressly provides for *Lone Pine* orders, but some courts have interpreted Rule 16 as conferring authority on district courts in complex litigation to use this or other means to manage discovery. *See, e.g., Abner*, 2017 WL 2273182, at *2. As noted by Defendant, *Lone Pine* orders are "pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in *mass tort litigation*." *Id.* Complex mass tort litigation typically involves a multitude of plaintiffs or a multitude of defendants. *Id.* The basic purpose of a *Lone Pine* order is to require the plaintiff to provide basic facts about his or her claims or risk having those claims be dismissed. *Id*. *Lone Pine* orders "identify and expose potentially meritless claims and streamline litigation in complex mass tort cases." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 (5th Cir. 2006). District judges have wide discretion in determining whether to grant or deny a request for entry of *Lone Pine* orders in managing the discovery process under Federal Rule of Civil Procedure 16. *Acuna*, 200 F.3d at 340. In the absence of complex mass tort litigation, courts generally do not grant requests for *Lone Pine* orders until after thorough discovery has taken place. *See, e.g., Roth v Cabot Oil & Gas Corp.,* 287 F.R.D. 293, 300 (M.D. Pa. 2012) (quoting *In re Digitek,* 264 F.R.D. at 259, for the proposition that "Resorting to and crafting a *Lone Pine* order should only occur whe[n] existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or whe[n] they cannot accommodate the unique issues of this litigation. We have not reached that point."). This is because *Lone Pine* orders are normally used as a last resort or procedural option, when all other procedural options have been exhausted. *See Roth*, 287 F.R.D. at 300; *In re Digitek,* 264 F.R.D. at 259.

The court determines that Defendant's request for a *Lone Pine* order is premature, and entry of such an order in this case is not warranted. A *Lone Pine* order is typically granted when there are multiple parties, whereas this case involves one plaintiff and one defendant. Although Defendant indicates that multiple cases have been filed against it by the same attorney on behalf of different plaintiffs, the court only has before it two such cases. Accordingly, this case is not, by definition, a mass tort litigation. Further, that the Decedent worked at various locations of Defendant's railroad for twenty-two years does not necessarily make this litigation complex, and the court does not believe that Defendant should be rewarded or that Plaintiff should be penalized simply because the Decedent, during his twenty-two years of employment with Defendant, worked at a number of Defendant's railroad locations. Defendant, as the Decedent's employer and the railroad carrier, should also be in as good, if not better, position than Plaintiff to know or determine, based on reference to its own internal records, the railroad locations where the Decedent worked, when he worked at these locations, the types of chemicals it used at these locations during these times, and the types of safety precautions, if any, it took or did not take.

Moreover, the court agrees with Plaintiff that Defendant's request for entry of a *Lone Pine* order, shortly after the filing of this case and before any discovery has been conducted, is an improper attempt to shift the burden to Plaintiff to come forward with evidence at the pleading stage of this case to establish the allegations in her Complaint in contravention of Rule 8(a)'s "notice pleading" standard. Accordingly, the court will deny Defendant's request for a *Lone Pine* order, as well as its alternative request to file a "no-evidence" summary judgment motion at this early stage when no discovery has yet to take place. On the other hand, if Defendant wishes to file a motion for judgment on the pleadings or motion to dismiss for failure to state a claim upon which relief can be

granted, it may do so, as long as it complies with Rule 12(c) or 12(b)(6) and the case authority governing such motions in this Circuit. The court also notes that, as a general rule, it does not allow parties to file more than one summary judgment motion, and it is not likely to make an exception or vary from that rule in this case unless good cause is established.

## IV. Conclusion

For the reasons herein explained, the court **denies** Defendant's Motion for More Definite Statement, **denies** the Motion for *Lone Pine* Order, and **denies** Defendant's alternative request to file a "no-evidence" summary judgment motion at this early stage of the case (Doc. 17). By separate order, the court will direct the parties to submit a joint status report and, after receiving that report, a scheduling order that governs the discovery, the filing of dispositive motions, and other matters in this case will be entered.

**It is so ordered** this 4th day of April, 2019.

Sam A. Lindsay
United States District Judge